UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONALD CARR, | : |
|     **Plaintiff** | :   CIVIL ACTION NO. 1:20-1209 |
| | : |
|     v. | :   (JUDGE MANNION) |
| | : |
| SMOKE et al., | : |
| | : |
|     **Defendants** | : |

## MEMORANDUM

Plaintiff Donald Carr ("Carr"), an inmate in state custody, filed the instant *pro se* lawsuit under 42 U.S.C. §1983. He alleges that numerous prison officials at State Correctional Institution, Frackville ("SCI Frackville") violated his constitutional rights while he was incarcerated in that facility. Presently pending are the parties' cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, the Court will grant in part and deny in part Defendants' Rule 56 motion and deny Carr's motion.

**I. BACKGROUND**

During all times relevant to this lawsuit, Carr was incarcerated at SCI Frackville. (Doc. 34 ¶2). The approximate time at issue in this case is a three-week period from April 5, 2019, to April 24, 2019. (Doc. 7 at 5; Doc. 34-1, Exhibit A, Carr Deposition (hereinafter "Carr Dep.") 13:12-15). Carr alleges

that, during this period, Defendants violated his Eighth Amendment rights through unconstitutional conditions of confinement and use of excessive force. (Doc. 7 at 5-6). He also asserts that his Fourteenth Amendment due process rights were infringed by the way his grievances were handled.[1] (Id.). Carr eventually identified the following eight defendants in this action: John Smolke, Kathy Brittain, Michael Gourley, James Meintel, Dorina Varner, Robert Reese, David Gregoire, and Jennifer Newberry. (See Docs. 7, 17, 28 at 1, 34-1 at 92).

The record establishes the following facts. On April 5, 2019, Carr was moved from the Restricted Housing Unit ("RHU") to the Psychiatric Observation Center ("POC") because he had set fire to his RHU cell. (Doc. 34 ¶3; Carr Dep. 5:8-17, 5:22-6:4, 7:16-8:10). Carr was placed in a "hard" or "dry" cell in the POC, meaning that he was "handcuffed and shackled to a bed." (Doc. 34 ¶4; Carr Dep. 8:14-9:12). The point of this procedure is to monitor an inmate if it was believed that the prisoner has ingested contraband that would eventually be excreted or regurgitated. (Carr Dep.

---

[1] It appears that Carr's amended complaint also alleges a First Amendment claim of denial of access to the courts. (See Doc. 7 at 5, 6).

- 2 -

9:5-17). In this case, prison officials claimed that Carr still had a lighter in his possession. (Id. at 8:14-21).

According to Carr, after being handcuffed and shackled for about four hours, Smolke—a correctional officer observing Carr—ordered Carr to stop massaging his ankles. (Doc. 34 7; Carr Dep. 7:21-8:1, 9:18-11:15). Smolke, in his incident report, claimed that Carr was not massaging his ankles but was "manipulating" his ankle restraints, and had also called Smolke "a bitch." (See Doc. 34-1 at 92). Carr refused to stop massaging his ankles despite Smolke's orders, and Smolke entered his cell and sprayed him with "Oleoresin Capsicum" spray, otherwise known as "OC" or pepper spray. (Carr Dep. 12:13-13:1; Doc. 34 ¶8). Carr believes that Smolke pepper sprayed him as retribution for an incident that had occurred several months earlier, in which Smolke denied Carr a shower and Carr threatened Smolke with physical violence. (Carr Dep. 9:19-10:11; Doc. 34 ¶14). Carr was then taken to the medical unit to be treated for the OC spray exposure. (Doc. 34-1 at 92-93).

Carr testified that, following the pepper spray incident, he was confined in another POC cell for the next 19 days even though he was not "POC status" and should not have been housed in the POC. (Carr Dep. 13:2-15,

- 3 -

20:13-23; see also Doc. 34 ¶13). He avers that his conditions of confinement during these 19 days were marked by extremely cold temperatures, lack of proper bedding (*e.g.*, no mattress and no blanket), inadequate clothing, and poor sanitation, including human feces on the floor. (Carr Dep. 14:5-15:22). According to Carr, these conditions were intentional and well known to inmates and staff, and the cell in which he was confined was colloquially referred to as the "grind-up cell" because it was used for "harsh punishment and retaliation." (Id. at 14:21-15:7, 17:15-23, 25:22-26:3). Carr further testified that, when he pointed out the feces in his cell to correctional officers, they informed him that senior-level correctional authorities told the staff not to allow him to clean his own cell. (Id. at 19:19-25). Carr asserts that he was finally released from the POC by Unit Manager Styka, who told him that he was not supposed to be housed in that unit. (Id. at 20:24-21:17).

After attempting resolution through the prison grievance system, Carr filed suit on July 15, 2020. (Doc. 1). Following the initial screening mandated by 28 U.S.C. §1915A(a), the Court directed Carr to file an amended complaint that comports with Rules 8 and 20 of the Federal Rules of Civil Procedure. (Doc. 6). Carr complied, filing an amended complaint approximately one week later. (Doc. 7).

Defendants have moved for summary judgment on all claims, (Doc. 33), and contemporaneously provided their statement of material facts as required by Local Rule of Court 56.1, (Doc. 34). On July 20, 2021, they filed their brief in support of their summary judgment motion. (Doc. 35). Carr's only response to Defendants' Rule 56 filings appears to be a cross-motion for summary judgment and an abbreviated supporting brief. (See Docs. 36, 37). He did not file a brief in opposition to Defendants' motion for summary judgment, nor did he file a responsive statement of material facts as required by Local Rule 56.1. The time for additional briefing has passed; thus, the cross-motions for summary judgment are ripe for disposition.

## II. STANDARD OF REVIEW

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law[.]" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once such a showing has been made,

the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990). Thus, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual dispute exists. Anderson, 477 U.S. at 248. Rather, the nonmovant "must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B).

In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992). Courts may resolve cross-motions for summary judgment concurrently. See Lawrence v. City of Philadelphia, 527 F.3d 299, 310 (3d Cir. 2008); 10A Charles Alan Wright, et al., Federal

PRACTICE AND PROCEDURE §2720 (3d ed. 2015). When doing so, the court is bound to view the evidence in the light most favorable to the nonmovant with respect to each motion. See Lawrence, 527 F.3d at 310 (citation omitted).

### III. DISCUSSION

Defendants move for summary judgment on all claims.[2] They argue that (1) there is a lack of personal involvement as to some named Defendants; (2) Carr has failed to proffer evidence of First or Fourteenth Amendment violations; and (3) the conditions and conduct complained of by Carr do not amount to Eighth Amendment violations. The Court will take each argument in turn.

#### A. Personal Involvement

It is well established that, in Section 1983 actions, liability cannot be "predicated solely on the operation of *respondeat superior*." Rode v.

---

[2] Carr also moves for summary judgment. However, his Rule 56 motion consists of a brief with two pages of argument and two pages of legal citations. (See generally Doc. 37). In his brief, he simply restates his version of the facts but does not identify what claim or claims he believes warrant a grant of summary judgment. (Id. at 1-2). Carr also does not cite any record evidence. (Id.) Accordingly, the Court is constrained to deny Carr's motion for summary judgment.

Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted); see also Ashcroft v. Iqbal, 556. U.S. 662, 676 (2009) (affirming same principle in Bivens context). Rather, a Section 1983 plaintiff must establish facts that demonstrate the defendant's "personal involvement in the alleged misconduct." Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020). Personal involvement can include direct wrongful conduct by a defendant, but it can also be demonstrated through evidence of "personal direction" or "actual knowledge and acquiescence." Id. (quoting Rode, 845 F.2d at 1207).

The pleadings and Rule 56 record plainly demonstrate that Carr's only claim against defendants Gregoire, Varner, and Newberry[3] is that they failed to handle his post-incident grievances appropriately. (See Doc. 7 at 5; Carr Dep. 23:4-25:12, 28:25-29:25). Such allegations, even if supported by evidence, do not constitute cognizable Section 1983 claims. That is because involvement in the post-incident grievance process alone does not give rise to Section 1983 liability. See Lewis v. Wetzel, 153 F. Supp. 3d 678, 696-97 (M.D. Pa. 2015) (collecting cases); see also Brooks v. Beard, 167 F. App'x

---

[3] Defendants do not mention Newberry in their briefing. However, from Carr's amended complaint and deposition, it is clear that Newberry's only involvement was in her role as grievance coordinator. (See Doc. 7 at 5; Carr Dep. 23:4-22).

923, 925 (3d Cir. 2006) (nonprecedential); Alexander v. Gennarini, 144 F. App'x 924, 925 (3d Cir. 2005) (nonprecedential) (explaining that district court "properly dismissed" prisoner's claims against certain defendants because allegations against them "merely assert their involvement in the post-incident grievance process"). Consequently, the Court will grant summary judgment in favor of Gregoire, Varner, and Newberry on all claims against them.

### B. First and Fourteenth Amendment Claims

It is not entirely clear which Defendants are the target of Carr's First and Fourteenth Amendment allegations. Nevertheless, the claims can be disposed of because the facts, even when viewed in a light most favorable to Carr, do not establish constitutional violations.

Carr alleges that his Fourteenth Amendment procedural due process rights were violated during the inmate grievance process, where his grievances and appeals were denied without proper procedure or adequate investigation. (See Doc. 7 at 5; Doc. 37 at 1-2). Carr, however, does not identify a liberty or property deprivation for which the "process" he received was constitutionally inadequate. Moreover, "inmate grievance procedures, in themselves, do not confer a liberty interest protected by the due process clause." Rhoades v. Adams, 194 F. App'x 93, 95 (3d Cir. 2006)

(nonprecedential); see also Caldwell v. Beard, 324 F. App'x 186, 189 (3d Cir. 2009) (nonprecedential); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (collecting cases).

As to his First Amendment court-access claim, Carr has not demonstrated that he suffered an "actual injury," *i.e.*, that he "lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim[.]" Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008) (quoting Christopher v. Harbury, 536 U.S. 403, 415 (2002)). Carr testified that, after five days of confinement in the POC, he was given writing and mailing materials. (Carr Dep. 18:16-25). He does not allege that, during that five-day period without such materials, he lost a chance to pursue a nonfrivolous underlying claim. The instant Section 1983 lawsuit, which includes his conditions-of-confinement claim, further demonstrates that Carr was not denied meaningful access to the courts. See Monroe, 536 F.3d at 205 ("[P]risoners may only proceed on access-to-court claims in two types of cases[:] challenges (direct or collateral) to their sentences and conditions of confinement."). Thus, the Court will grant judgment in Defendants' favor on Carr's First and Fourteenth Amendment claims.

C.  **Eighth Amendment Claims**

The only remaining claims are Carr's allegations of unconstitutional conditions of confinement and excessive force. Carr contends that Smolke used excessive force by pepper spraying him without justification. He alleges that Reese, Brittain, Gourley, and Meintel are liable for the unconstitutional conditions of confinement. Only the claims against Smolke and Brittain can withstand Rule 56 scrutiny.

1.  **Conditions of Confinement**

To prevail on an Eighth Amendment conditions-of-confinement claim, a plaintiff must show both objective and subjective elements. See Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 226 (3d Cir. 2015). Objectively, the prisoner must demonstrate that "the prison official deprived the prisoner of the minimal civilized measure of life's necessities," often referred to as a "sufficiently serious" deprivation. Id. (citing Farmer v. Brennan, 511 U.S. 825, 843 (1994); Wilson v. Seiter, 501 U.S. 294, 297 (1991)). Subjectively, the prisoner must show that "the prison official acted with deliberate indifference" to the prisoner's "health or safety." Id. (citing Farmer, 511 U.S. at 834). Deliberate indifference means that the defendant "acted or failed to act despite having knowledge that her actions or inaction,

as the case may be, would subject the inmate to a substantial risk of serious harm." Id. at 227 (citing Farmer, 511 U.S. at 842).

As for Reese, Gourley, and Meintel, Carr's conditions-of-confinement claim begins and ends with the second, subjective element. Carr has failed to provide *any* evidence, beyond speculation, that these three Defendants were aware of his April 2019 conditions of confinement. Carr makes clear in his deposition that he simply assumed, based on unspecified policy, that Reese, Gourley, and Meintel had to be aware that Carr was wrongfully housed in the POC because they were required to "sign off" on this placement and the restrictions to which Carr was subjected. (See Carr Dep. 26:19-27:15, 27:22-28:24).

There are two problems with this argument. First, Carr has not established that merely being housed in the POC for 19 days for security purposes (rather than psychiatric purposes) rises to the level of an Eighth Amendment violation. Indeed, such a proposition is highly unlikely, as prison officials have considerable discretion regarding inmate placement. See McKune v. Lile, 536 U.S. 24, 39 (2002) (explaining that "the decision where to house inmates is at the core of prison administrators' expertise").

Second, and more importantly, Carr has not proffered any evidence that would support what he concedes are assumptions. In his deposition, he admits that he "assume[d]," based on unspecified "policy," that Reese, Gourley, and Meintel "had to sign off on" the restrictions under which Carr was placed. (Carr Dep. 26:24-27:13, 28:3-24). However, Carr has failed to identify any specific policy or prove in some other way that Reese, Gourley, and Meintel were aware of, or involved in, the alleged Eighth Amendment violation. At the Rule 56 stage, this omission is fatal to Carr's claims against these Defendants; a plaintiff cannot rest on mere allegations when defending against a motion for summary judgment. See Celotex Corp., 477 U.S. at 324; see also Thomas v. Tice, 948 F.3d 133, 139 (3d Cir. 2020) (determining that conditions-of-confinement claim failed as to certain prison-official defendants when prisoner provided no evidence that those officials had knowledge of allegedly unconstitutional conditions).

Carr's claim against Brittain is distinguishable. Carr testified that Brittain was physically present outside of his cell in the POC and that he attempted to speak with her about the cell's conditions. (Carr Dep. 25:21-26:11). According to Carr, Brittain ignored his entreaties and joked with nearby correctional staff that Carr's POC placement was retaliation for him

setting fire to his RHU cell and that "they [were]n't going to let [him] out." (Id.). This testimony, viewed in a light most favorable to Carr, is sufficient evidence that Brittain acted with deliberate indifference to Carr's allegedly unconstitutional conditions of confinement.

Carr must still establish that the deprivation was "sufficiently serious." Defendants address Carr's complaints in piecemeal fashion, arguing that each condition in isolation is insufficient to implicate the Eighth Amendment. (See Doc. 35 at 21-26). However, conditions of confinement must be viewed in their totality. Tillery v. Owens, 907 F.2d 418, 426-27 (3d Cir. 1990) (citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). When viewing the totality of the conditions, the Court cannot conclude, as a matter of law, that they are not sufficiently serious. Carr testified that, for 19 days, he was kept in a frigid cell with exposure to human feces, had no socks or underwear, and had to sleep on a concrete floor because he lacked a mattress and blanket. These deprivations implicate basic human necessities, such as "warmth" and proper sanitation. See Taylor v. Riojas, __ U.S. __, 141 S. Ct. 52, 53 (2020) (exposure to human feces, cold temperatures); Wilson, 501 U.S. at 304 (listing "food, warmth, [and] exercise" as identifiable human needs); Tillery,

907 F.2d at 426 (collecting cases regarding unconstitutional conditions). Carr has therefore adduced evidence as to the objective element of his claim.

Because Carr has proffered evidence to support both elements of his conditions-of-confinement claim against Brittain, summary judgment will be denied on that claim. Carr's unsupported allegations against Reese, Gourley, and Meintel, on the other hand, compel the Court to grant summary judgment in their favor.

### 2. Excessive Force

Carr contends that Smolke used excessive force when he unnecessarily sprayed Carr with pepper spray. Smolke counters that the use of force was reasonable and proportional under the circumstances, and thus did not violate the Eighth Amendment.

In a Section 1983 claim for excessive force, the "pivotal inquiry" is whether "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Ricks v. Shover, 891 F.3d 468, 480 (3d Cir. 2018) (quoting Smith v. Mensinger, 293 F.3d 641, 649 (3d Cir. 2002)). The factors analyzed when making this inquiry include: "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury

inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of facts known to them; and (5) any efforts made to temper the severity of the forceful response." Id. (quoting Smith, 293 F.3d at 649).

Smolke maintains that the use of pepper spray was necessary because Carr was "manipulating" his ankle restraints and was refusing to follow orders to stop. Carr, however, testified that he had been in handcuffs and shackles for four hours and was merely massaging his ankle, an activity that was not prohibited. Because Carr is the nonmovant, his version of the facts must be taken as true. Big Apple BMW, Inc. 974 F.2d at 1363. The first excessive force factor, consequently, weighs in Carr's favor, because under his factual rendition it is debatable whether any use of force was needed.

The relationship between the need and the amount of force used likewise favors Carr. The record demonstrates that Carr was handcuffed and shackled in a dry cell, had been in that position for four hours, and was being monitored by at least one correctional officer at all times. Even in the unlikely event that Carr was somehow able to "manipulate" his ankle restraints in such a way as to loosen or remove them, Carr would still be handcuffed and locked in an observation cell. There was no danger to correctional staff or

other inmates, nor has Smolke offered any explanation as to why lesser force could not have been used. Carr further points out that, even though he had been monitored in the dry cell by multiple correctional officers and had been massaging his ankle in front of all of them, only Smolke took issue and applied force. (See Carr Dep. 11:11-12:5).

The extent of the injury inflicted weighs slightly in Carr's favor or is neutral. Carr was immediately taken to the medical unit and treated. He had his eyes flushed multiple times and testified that his "whole skin was burning." (Carr Dep. 30:12-15; Doc. 34-1 at 93, 95, 96, 99). He further testified that he began having panic attacks after he was sprayed and continued to have them following the incident. (Carr Dep. 30:15-25). His injuries clearly rise above the requisite "de minimus" showing, but do not appear to be permanent or debilitating as compared to other excessive force cases. See, e.g., Skrtich v. Thornton, 280 F.3d 1295, 1300 (11th Cir. 2002) (multiple rib fractures, hemopneumothorax, back fracture, abdominal trauma).

As to the extent of the threat to the safety of staff and inmates, this factor plainly favors Carr. As discussed above, there does not appear to have been any threat to correctional staff or other inmates. Carr was handcuffed

and shackled in a locked cell and, according to his version of events, was simply massaging his ankle.

The final factor also favors Carr. Although Smolke asserts that he gave Carr several warnings to stop the activity with the restraints, there is nothing in the record to indicate that Smolke made any effort to temper the severity of his application of force. When Carr did not comply with Smolke's orders, Smolke pepper sprayed a handcuffed and shackled inmate in a secured observation cell. See Robinson v. Danberg, 673 F. App'x 205, 210 (3d Cir. 2016) (nonprecedential) (finding that Eighth Amendment claim could proceed when correctional officer applied potentially excessive force during handcuffing incident when inmate was "locked securely in his cell and offering no resistance" to removal of handcuffs); Foulk v. Charrier, 262 F.3d 687, 692, 701-02 (8th Cir. 2001) (holding that district court correctly allowed excessive force claim to go to trial where correctional officer pepper sprayed a securely confined inmate in the face).

When considering these factors together, the Court concludes that they militate in favor of Carr's excessive force claim surviving Defendants' Rule 56 challenge. In other words, a reasonable juror could conclude that,

under the circumstances, the force Smolke applied was unwarranted and thus unconstitutional.

Smolke cites Jones v. Wetzel, 737 F. App'x 61, 65-66 (3d Cir. 2018) (nonprecedential), to support his use of pepper spray, but that case actually bolsters Carr's position. In Jones, pepper spray was used "as a method of last resort" after the inmate had been "medically cleared for its use and a nurse was present with the compliance team to attend to" the prisoner's medical needs. Id. at 65. The inmate was "repeatedly given notice that [pepper spray] would be used if he did not comply," and had "numerous opportunities over the course of several hours to avoid" its administration. Id. at 65-66. The facts in the instant case are clearly distinguishable. Consequently, the Court must deny summary judgment as to Carr's Eighth Amendment excessive force claim against Smolke.

**IV. CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment, (Doc. 33), will be granted in part and denied in part, and Carr's motion for summary judgment (Doc. 36) will be denied.

An appropriate Order follows.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: February 25, 2022**
20-1209-01